**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

MICHAEL FILAK and CAROLYN FILAK, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AVANTAX ADVISORY SERVICES, INC. and AVANTAX INVESTMENT SERVICES, INC.,

Defendants.

Case No. 3:26-cv-02573-X

CLASS ACTION

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING BRIEF**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND ........................................................................................1

STANDARD OF REVIEW ........................................................................................3

ARGUMENT ........................................................................................................3

I. The Complaint Fails Rule 8's Basic Pleading Standards and Should Be Dismissed Under Rule 12(b)(6) or a More Definite Statement Should Be Required. ..........................3

II. Plaintiffs' Breach of Contract Claim Fails (Count I). ..........................................3

A. Plaintiffs Fail to Allege the Formation of a Contract. ........................................4

B. Plaintiffs Fail to Allege a Breach. ........................................................4

1. Plaintiffs' Reasonable Rate-Related Allegations Do Not Support a Breach of Contract Claim. ........................................................5

2. Plaintiffs' Use of the Sweep Disclosure as a Basis for a Breach Fails. ........................................................5

3. Plaintiffs' Purported Benchmarks Are Not a Basis for Breach. ..................7

4. The Complaint Invents a Misplaced "Best Interest" Contractual Duty. ........................................................7

III. The Breach of Implied Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed (Count II). ........................................................8

IV. The Complaint Does Not State a Claim for Breach of Fiduciary Duty (Count III). ............9

A. Plaintiffs Have Not Alleged the Existence of a Fiduciary Duty. ...........................10

B. Plaintiffs Have Not Adequately Alleged Breach, Causation, or Damages. ...........15

V. Plaintiffs' Negligent Misrepresentation and Omissions Claim Should Be Dismissed (Count IV). ........................................................15

A. The Independent Duty Doctrine Bars Count IV. ..............................................16

B. Plaintiffs Fail to Plead Breach of Duty. ........................................................17

C. There Are No Allegations of Reasonable Reliance. ..........................................18

D. Plaintiffs Do Not Plead That Defendants Caused Them Damages. .......................18

E. Plaintiffs Have Not Pled Negligent Misrepresentation with Particularity............18

VI. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count V)...................................19

VII. Plaintiffs' Massachusetts Consumer Protection Law ("MCPL") Claim Should Be Dismissed (Count VI). ..........................................................................................20

A. Plaintiffs Have Not Alleged that Avantax Committed a Deceptive Act. .............21

1. Plaintiffs Fail to Allege That Avantax Misled Them...............................21

2. Plaintiffs Have Not Alleged a Misleading Omission................................22

B. Plaintiffs Fail to Allege That Avantax Committed an Unfair Practice.................23

C. Plaintiffs Fail to Allege Misrepresentation, Damages, or Causation With Particularity.........................................................................................24

D. Treble Damages Are Unavailable to Plaintiffs. ...................................................24

E. Amendment of the MCPL Claim Is Futile..........................................................25

VIII. Plaintiffs' Request for Punitive Damages Should Be Stricken........................................25

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alantra LLC v. Apex Indus. Techs. LLC*,
636 F. Supp. 3d 223 (D. Mass. 2022) ........ 11

*Allen v. Fid. Brokerage Servs. LLC*,
711 F. Supp. 3d 219 (S.D.N.Y. 2024) ........ 14

*Artuso v. Vertex Pharm., Inc.*,
637 F.3d 1 (1st Cir. 2011) ........ 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3, 13

*In re Atl. Fin. Mgmt. Inc. Sec. Litig.*,
658 F. Supp. 380 (D. Mass. 1986) ........ 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 3

*Bos. Symphony Orchestra, Inc. v. Com. Union Ins. Co.*,
545 N.E.2d 1156 (Mass. 1989) ........ 24

*Brooks v. AIG SunAmerica Life Assur. Co.*,
480 F.3d 579 (1st Cir. 2007) ........ 6

*Chokel v. Genzyme Corp.*,
867 N.E.2d 325 (Mass. 2007) ........ 8

*Cole v. New England Mut. Life Ins. Co.*,
729 N.E.2d 319 (Mass. App. Ct. 2000) ........ 15

*Conklin v. Bank of New York Mellon Corp.*,
No. 1:24-cv-12301-IT, 2025 WL 2421003 (D. Mass. Aug. 21, 2025) ........ 11

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ........ 7

*De Prins v. Michaeles*,
189 F. Supp. 3d 209 (D. Mass. 2016) ........ 10

*Delhomme v. Caremark Rx Inc.*,
232 F.R.D. 573 (N.D. Tex. 2005) ........ 2

*Dey v. Robinhood Mkts., Inc.*,
780 F. Supp. 3d 882 (N.D. Cal. 2025) ....................12, 13

*Distefano v. Bank of Am., N.A.*,
822 F. Supp. 3d 168 (D. Mass. 2026) ....................24

*Feingold v. John Hancock Life Ins. Co. (USA)*,
No. CIV.A. 13-10185-JLT, 2013 WL 4495126 (D. Mass. Aug. 19, 2013),
*aff'd*, 753 F.3d 55 (1st Cir. 2014) ....................19

*Fener v. Belo Corp.*,
513 F. Supp. 2d 733 (N.D. Tex. 2007) ....................3, 15

*Fennell v. Svenska Amerika Linien A/B*,
23 F.R.D. 116 (D. Mass. 1958) ....................4

*Futo v. U.S. Bancorp*,
826 F. Supp. 3d 1016 (D. Minn. 2026) .................... *passim*

*Gen. Convention of New Jerusalem in the U.S. of Am., Inc. v. MacKenzie*,
874 N.E.2d 1084 (Mass. 2007) ....................21

*Gibbs v. SLM Corp.*,
336 F. Supp. 2d 1 (D. Mass. 2004), *aff'd*, No. 05-1057, 2005 WL 5493113
(1st Cir. Aug. 23, 2005) ....................4

*Goldsmith v. UBS Fin. Servs. Inc.*,
No. 1:24-CV-6354-GHW, 2026 WL 819461 (S.D.N.Y. Mar. 25, 2026) ....................19

*Haglund v. Estee Lauder Cos., Inc.*,
466 F. Supp. 3d 292 (D. Mass. 2020) ....................5

*Hoilman v. Werner*,
No. CV 18-10117-RGS, 2019 WL 2567334 (D. Mass. June 21, 2019) ....................8

*House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., Inc.*,
775 F. Supp. 2d 296 (D. Mass. 2011) ....................25

*Int'l Fid. Ins. Co. v. Wilson*,
443 N.E.2d 1308 (Mass. 1983) ....................25

*In re JPMorgan Chase Cash Sweep Program*,
No. 24 CIV. 6404 (LGS), 2026 WL 396055 (S.D.N.Y. Feb. 12, 2026) ....................13

*Kriegel v. Bank of Am., N.A.*,
No. 07CV12246-NG, 2010 WL 3169579 (D. Mass. Aug. 10, 2010) ....................10

*Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*,
802 F. Supp. 3d 701 (S.D.N.Y. 2025)....................12, 17

*In re LPL Fin. Cash Sweep Litig.*,
789 F. Supp. 3d 961 (S.D. Cal. 2025).................... *passim*

*Maio v. TD Bank*,
N.A., No. 1:22-CV-10578-AK, 2023 WL 2465799 (D. Mass. Mar. 10, 2023)....................11

*Marine Bank v. Weaver*,
455 U.S. 551 (1982)....................15

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
775 F.3d 109 (1st Cir. 2014)....................25

*N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*,
567 F.3d 8 (1st Cir. 2009)....................15, 18

*Nizhoni Health Sys. LLC v. Netsmart Techs., Inc.*,
No. 22-CV-11212-DJC, 2023 WL 3657386 (D. Mass. May 25, 2023) ....................16

*Ollie v. City of DeSoto*,
No. 3:22-cv-1261-S-BN, 2022 WL 4389562 (N.D. Tex. Aug. 30, 2022)
(*report and recommendation adopted*, No. 3:22-CV-1261-S-BN, 2022 WL
4390446 (N.D. Tex. Sept. 22, 2022)) ....................3

*Patenaude v. Orgain, LLC*,
594 F. Supp. 3d 108 (D. Mass. 2022)....................22

*Philibotte v. Nisource Corp. Servs. Co.*,
793 F.3d 159 (1st Cir. 2015)....................19

*Plante & Moran, PLLC v. Andover Healthcare, Inc.*,
No. 17-CV-10093-DJC, 2018 WL 935423 (D. Mass. Feb. 16, 2018)....................16

*Schmidlin v. Raymond James Fin., Inc.*,
No. 8:24-cv-2041-KKM-CPT, 2026 WL 847197 (M.D. Fla. Mar. 27, 2026)....................14, 19

*Shaulis v. Nordstrom Inc.*,
120 F. Supp. 3d 40 (D. Mass. 2015),
*aff'd*, 865 F.3d 1 (1st Cir. 2017) ....................20

*Sonoran Scanners, Inc. v. Perkinelmer, Inc.*,
585 F.3d 535 (1st Cir. 2009)....................9

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
365 F.3d 353 (5th Cir. 2004) ....................3

*Szulik v. State St. Bank & Tr. Co.*,
935 F. Supp. 2d 240 (D. Mass. 2013) .......... 11

*Tomasella v. Nestle USA, Inc.*,
962 F.3d 60 (1st Cir. 2020) .......... 20, 21, 22, 23

*Treadwell v. John Hancock Mut. Life Ins. Co.*,
666 F. Supp. 278 (D. Mass. 1987) .......... 16

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
464 F. Supp. 3d 634 (S.D.N.Y. 2020) .......... 19, 20

*Wagner v. Federal Home Loan Mortg. Corp.*,
494 F. Supp. 3d 80 (D. Mass. 2020) .......... 4, 23

*Welch v. TD Ameritrade Holding Corp.*,
No. 07 Civ. 6904, 2009 WL 2356131 (S.D.N.Y. July 27, 2009) .......... 7

*In re Wells Fargo Cash Sweep Litig.*,
No. 24-CV-04616-VC, 2025 WL 1785315 (N.D. Cal. June 27, 2025) .......... 13, 19

*Zurich Am. Ins. Co. v. Watts Regul. Co.*,
796 F. Supp. 2d 240 (D. Mass. 2011) .......... 23, 24, 25

**Statutes**

29 U.S.C. § 1003 .......... 5

Investment Advisers Act .......... 13, 14, 15

Massachusetts Consumer Protection Law .......... 20, 25

Securities Exchange Act of 1934 .......... 13

**Other Authorities**

17 C.F.R. § 240.15l-1(a)(1) .......... 13

The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33327 (July 12, 2019) .......... 14

Comm'n Interpretation Regarding Standard of Conduct for Inv. Advisers, 84 Fed. Reg. 33669, 33676 (June 5, 2019) .......... 15

Fed. R. Civ. P. 8 .......... 3, 12, 13, 19

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 3, 4

Fed. R. Civ. P. 12(e) ....................................................................................................3, 4

Merriam-Webster Dictionary, Black's Law Dictionary, the IRS, and the Department of Labor ....................................................................................................5

## INTRODUCTION

Plaintiffs challenge the interest rates paid by Avantax Investment Services, Inc. ("AIS") to them through AIS's cash sweep program ("Cash Sweep Program" or "Program"), and its affiliate's — Avantax Advisory Services, Inc. ("AAS," and together with AIS, "Avantax" or "Defendants") — sponsorship, purported authority over, and direct benefit from this program. The voluntary Cash Sweep Program enables AIS's brokerage account customers to earn extra interest on money awaiting investment in their account by sweeping their short-term cash into interest-bearing accounts at participating program banks ("Program Banks"). Compl. ¶ 2. Plaintiffs attempt to invent a fictitious "reasonable rate" interest payment obligation, and contend that Defendants did not disclose enough specifics about the rates paid in the Program.

Plaintiffs' Complaint is deficient in material ways, and Defendants are left guessing as to key elements of their claims. They make no effort to separate the Defendants and their alleged conduct, and Plaintiffs squarely misrepresent Defendants' disclosures. Their Complaint also contradicts itself, claiming that Defendants' interest rates remained "static," despite graphics in the Complaint showing significant increases. *E.g.*, Compl. ¶ 76. Plaintiffs' Complaint should be dismissed with prejudice. *Futo v. U.S. Bancorp*, 826 F. Supp. 3d 1016, 1039 (D. Minn. 2026) (dismissing similar cash sweep claims with prejudice).

## FACTUAL BACKGROUND

Defendant AIS is a broker-dealer. Compl. ¶ 9. Independent financial advisors and financial institutions partner with AIS for securities brokerage services. AIS does not offer ongoing investment advice; that advice is offered through AAS, an affiliated entity and co-Defendant in

this case. Exhibit ("Ex.") A[1] at 3[2]. Clients control all investment decisions in a brokerage account. Ex. B at 50 ("We agree, subject to our acceptance of an authorized order, to buy, sell, or otherwise dispose of securities for you according to your instructions."). AIS does not even have an obligation to monitor these investments. *Id.* at 55 ("As an account owner, you are responsible for monitoring your account.").

Plaintiffs allege that they were AIS's brokerage account customers and participated in Defendants' Standard Bank Deposit Sweep Program ("Program"). Compl. ¶¶ 1, 6–7. The Complaint alleges little about their accounts, e.g., they do not allege when either of their accounts opened, how much money they maintained, nor how much interest they were paid.

In Defendants' Cash Sweep Programs, for participating customers, uninvested cash balances held in a participating AIS account are transferred, or "swept," into interest-bearing, FDIC-insured deposit accounts with an unaffiliated bank and back when needed in the AIS account. Compl. ¶ 2; Ex. C at 60. Once the uninvested cash is swept, the Program Bank pays interest to AIS on the cash deposited, a portion of which is credited to the client's AIS account. Ex. C at 60. The interest rate paid to the customer depends on the amount deposited by tier of investment and the fee being charged. Interest rates, deposit tiers, and AIS's fees formula are publicly disclosed. *Id.* at 60, 66; Compl. ¶ 30.

---

[1] The Court may consider the full content of documents incorporated by reference in the Complaint in a motion to dismiss. *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 577 (N.D. Tex. 2005). Plaintiffs' reliance on Defendants' disclosures, agreements, and Form ADVs throughout the Complaint, including in footnotes 1, 2, and 3, permits the Court to consider the full context of the language in those documents, which are submitted as exhibits to this motion to dismiss. *See* Ex. A (AAS Form ADV 2A Disclosure Brochure (March 28, 2025)); Ex. B (AIS Brokerage Account Customer Agreement); Ex. C (AIS Standard Bank Deposit Sweep Program – Disclosure Statement); Ex. D (Avantax Advisory Services Form ADV 2A Appendix 1 – Wrap Fee Program Brochure (March 28, 2025)).

[2] Page numbers in citations to exhibits refer to "App." page numbers in Defendants' Appendix.

## STANDARD OF REVIEW

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept a complaint's well-pled allegations as true, this presumption does not extend to "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Fener v. Belo Corp.*, 513 F. Supp. 2d 733, 738 (N.D. Tex. 2007) (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Plaintiffs' Complaint fails to state a claim under Rule 12(b)(6).

## ARGUMENT

### I. The Complaint Fails Rule 8's Basic Pleading Standards and Should Be Dismissed Under Rule 12(b)(6) or a More Definite Statement Should Be Required.

Plaintiffs fail to comply with Fed. R. Civ. P. 8, which requires a short and plain statement alleging a plausible claim against each defendant. Their barebones Complaint does not distinguish between the Defendants, simply lumping them together. *See, e.g.*, Compl. ¶¶ 48–50, 54–55. This leaves Defendants guessing as to which allegations tie to which Defendant. This serious pleading deficiency requires dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6).[3] *Ollie v. City of DeSoto*, No. 3:22-cv-1261-S-BN, 2022 WL 4389562, at *3 (N.D. Tex. Aug. 30, 2022) (*report and recommendation adopted*, No. 3:22-CV-1261-S-BN, 2022 WL 4390446 (N.D. Tex. Sept. 22, 2022)). At a minimum, the Court should order Plaintiffs to amend under Fed. R. Civ. P. 12(e).

### II. Plaintiffs' Breach of Contract Claim Fails (Count I).

Plaintiffs' breach of contract claim fails to state a claim under Fed. R. Civ. P. 12(b)(6). The

[3] While Plaintiffs failed to attach an alleged contract with Defendants, the Defendants do not object to Plaintiffs' claim that Massachusetts Commonwealth substantive law applies to this case. Compl. ¶ 17. However, Plaintiffs' group pleading is a procedural deficiency under Fed. R. Civ. P. 8.

Complaint is ambiguous as to: (i) what document(s) constitute the contract; (ii) whether either Plaintiff entered a contract with AAS; (iii) which provisions are at issue; and (iv) the basis for the alleged breach. Defendants are left guessing, which alone is grounds for either (i) dismissal under Fed. R. Civ. P. 12(b)(6), *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 16–17 (D. Mass. 2004), *aff'd*, No. 05-1057, 2005 WL 5493113 (1st Cir. Aug. 23, 2005), or (ii) a more definite statement under Rule 12(e). *Fennell v. Svenska Amerika Linien A/B*, 23 F.R.D. 116, 117 (D. Mass. 1958).

To maintain a breach of contract claim under Massachusetts law, Plaintiffs must allege "that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready . . . to perform [their] part of the contract; the defendant committed a breach . . . ; and the plaintiff suffered harm as a result." *Wagner v. Federal Home Loan Mortg. Corp.*, 494 F. Supp. 3d 80, 85 (D. Mass. 2020). Plaintiffs fall woefully short.

### A. Plaintiffs Fail to Allege the Formation of a Contract.

Plaintiffs claim that Defendants' relationship with their customers is governed by "contractual terms" set forth in an indeterminate set of documents that Plaintiffs fail to clearly identify. The closest Plaintiffs get to alleging anything about a contract is when they quote the AIS Sweep Disclosure (Ex. C). *See, e.g.*, Compl. ¶¶ 22, 90–91. But Plaintiffs never allege that this is the full governing document for their relationship with either Avantax Defendant. Indeed, AAS is not even a party to this document. Ex. C at 60. Plaintiffs fail to allege any contract with AAS at all — they only cite an appendix to a "brochure." Compl. ¶ 14 n.1 (Ex. D). Without more, Plaintiffs' breach of contract claim fails before it even gets off the ground. *Gibbs*, 336 F. Supp. 2d at 16.

### B. Plaintiffs Fail to Allege a Breach.

Plaintiffs also fail to allege any plausible facts about a purported breach by Defendants, which is fatal to their claim. Plaintiffs generically claim that "Defendants . . . violat[ed] [unspecified] contractual duties by . . . failing to pay reasonable sweep interest rates to customers

and extracting unreasonable fees for themselves," (Compl. ¶ 55), but Plaintiffs fail to: (i) delineate between the Defendants; (ii) allege which provisions of what specific contracts were purportedly breached; (iii) state what precise rates Defendants paid to customers and/or Plaintiffs; and (iv) set forth the interest rates that purportedly should have been paid. These pleading failures doom their contract claim. *Haglund v. Estee Lauder Cos., Inc.*, 466 F. Supp. 3d 292, 298–99 (D. Mass. 2020) (dismissing breach of contract claim for failure to allege which provisions defendant breached).

**1. Plaintiffs' Reasonable Rate-Related Allegations Do Not Support a Breach of Contract Claim.**

Throughout the Complaint, Plaintiffs seem to allege that the interest rates paid by Defendants as part of the Program were unreasonable and that somehow constitutes a breach. *See, e.g.*, Compl. ¶¶ 29, 32, 38, 48, 55. Yet, Plaintiffs cite no agreement term or disclosure requiring payment by Defendants of "reasonable" rates. Instead, Plaintiffs rely on various irrelevant definitions to invent a reasonable rate payment obligation, such as the Merriam-Webster Dictionary, Black's Law Dictionary, the IRS, and the Department of Labor, among others. *Id.* ¶¶ 24–29. None of these definitions, each of which differs from the others, are set forth in any alleged contract document or in any applicable statute or regulation, and none relates specifically to how a cash sweep program functions. Plaintiffs' unexplained references to ERISA are particularly puzzling. *Id.* ¶¶ 18, 59–60, 65–66. ERISA only applies to plans that are established or maintained by an employer or employee organization absent narrowly defined exceptions, none of which are pled. 29 U.S.C. § 1003. Accordingly, to the extent Plaintiffs are trying to base a breach of contract claim on Defendants' alleged failure to pay "reasonable" rates, Count I fails.

**2. Plaintiffs' Use of the Sweep Disclosure as a Basis for a Breach Fails.**

To the extent that Plaintiffs are relying on the Sweep Disclosure as the governing agreement between the parties and claiming a breach for not adjusting interest rates based on

"prevailing economic and business conditions," (*e.g.*, Compl. ¶ 22), they are incorrect. First, the Sweep Disclosure has ample verbiage addressing interest rates, the vast majority of which Plaintiffs fail to mention. Ex. C. Specifically, AIS discloses that the rates may be set lower than "prevailing market interest rates." *Id.* at 66. Thus, any purported breach cannot be based on "prevailing economic and business conditions" alone. And, even if it were true that Defendants were required to adjust rates over time based on these conditions (which Defendants dispute), Plaintiffs allege only that Defendants failed to "pay competitive, reasonable, market-based interest rates." Compl. ¶ 48. This disjointed, non-specific allegation falls woefully short of an alleged breach. *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007).

Moreover, Plaintiffs' breach of contract claim is belied by their own allegations. Plaintiffs acknowledge that rates paid under the Program increased from June 2022. Compl. ¶¶ 30–31. Plaintiffs do not allege, and there is no requirement, that any changes in rates paid under the Program must be in lockstep with or have a specific relationship to changes in the Fed Funds rate or with any other market metric. For this reason, Count I should be dismissed with prejudice.

Second, in the AIS Sweep Disclosure, AIS discloses that the current interest rates "may change at any time and may be based on a number of factors." Ex. C at 65. This example language shows that the full document must be considered; it is misleading to read the "prevailing economic and business conditions" language in isolation. Thus, this clause cannot support a purported breach.

Third, mere references to the market as a factor on which AIS relies in the AIS Sweep Disclosure are insufficient to create a binding obligation that could be breached. *Futo*, 826 F. Supp. 3d at 1035. In *Futo*, the Court noted that nearly identical language did not constitute a contractual obligation. *Id.* ("Saying that interest rates 'can vary and are impacted by several factors, including . . . market environment,' is a truism, not a commitment to paying 'market,' 'reasonable,'

or 'minimum' interest rates.") (internal citation omitted). This is especially true when, as here, rates were "based on a number of factors," of which the "market" is just one. Ex. C at 65.

### 3. Plaintiffs' Purported Benchmarks Are Not a Basis for Breach.

Plaintiffs also use Vanguard, Fidelity, and Robert W. Baird's cash sweep programs to support their breach of contract claim. Compl. ¶¶ 44–45. But Plaintiffs do not allege why Vanguard and Fidelity, two direct-to-consumer brokerages, are relevant to AIS, an independent broker-dealer that does not manage assets. Furthermore, they allege that Fidelity and Vanguard offer rates of 1.82% and 1.75%, respectively, (*id.* ¶ 44), and Robert W. Baird offers rates "ranging from 0.94% to 1.98%." *Id.* They do not, however, allege when those rates were offered or the deposit tiers for which those rates were offered. Nor do they allege what interest rates AIS paid at the same time for those same deposit tiers. Comparisons that ignore deposit tiers are meaningless and cannot support a breach of contract claim. *Cf. Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904, 2009 WL 2356131, at *9 (S.D.N.Y. July 27, 2009). These are meaningless apples-to-oranges comparisons. *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020).

### 4. The Complaint Invents a Misplaced "Best Interest" Contractual Duty.

Plaintiffs also claim that AAS was "contractually . . . obligated to act in its customers' best interest in seeking and negotiating reasonable interest rates under the Program." Compl. ¶ 54. Yet Plaintiffs do not state where, if anywhere, this contractual obligation resides. They not only omit any specific citation, but they also do not cite to their catch-all "Program Documents" defined term. For this reason alone, the Court should not consider this conclusory claim.

Setting aside its freestanding nature, the claim is belied by the many disclosures to the contrary. Defendants disclose the conflict of interest inherent in the Cash Sweep Program:

- "AAS[] receives substantial economic . . . benefits from NFS." Ex. D at 73–74.
- "AAS' and AIS' affiliation creates conflicts of interest." *Id.*

- "The Program creates financial benefits for [AIS] and NFS. [AIS] will receive a fee from each Program Bank in connection with the Program." Ex. C at 60, 66.

With the conflicts clearly disclosed, Plaintiffs cannot plausibly plead that their "best interest" argument states a claim for breach of contract.

Near-identical language in the same circumstances has already been held to not constitute a breach. In a cash sweep case against LPL Financial LLC ("LPL"), plaintiffs alleged that LPL breached the terms of its agreements with plaintiffs when it failed to pay a "fair and reasonable interest rate" on their cash sweep account balances. *In re LPL Fin. Cash Sweep Litig.*, 789 F. Supp. 3d 961, 989 (S.D. Cal. 2025). In dismissing that claim, the court held that the plain language of the contract stated that only when the Defendants provide a "recommendation" does the "best interest" provision apply. *Id.* The default Cash Sweep Program did not constitute a "recommendation" because it was deliberately listed as an example of a conflict. *Id.* The court also noted that the plaintiff could leave the Program at any time. *Id.* Just like LPL's disclosure, Avantax's documents disclose the conflict inherent in the Cash Sweep Program to its customers, who are free to opt out at any time. Ex. A at 45; Ex. C at 60, 65. Plaintiffs' freestanding "best interest" argument thus cannot support a breach of contract claim, which should be dismissed.

## III. <u>The Breach of Implied Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed (Count II).</u>

The Court should dismiss Count II, which merely recycles the breach of contract claim while omitting critical elements. To start, since Plaintiffs' breach of contract claim fails (Part II *supra*), their breach of the implied covenant claim fails as well. *Hoilman v. Werner*, No. CV 18-10117-RGS, 2019 WL 2567334, at *2 n.6 (D. Mass. June 21, 2019).

Count II also fails because Plaintiffs have not adequately alleged bad faith. *Chokel v. Genzyme Corp.*, 867 N.E.2d 325, 330 n.6 (Mass. 2007) ("[I]n order to prevail on a motion to

dismiss, a plaintiff's complaint must indicate some facts that would allow a jury to find that the defendant acted in bad faith."); *Sonoran Scanners, Inc. v. Perkinelmer, Inc.*, 585 F.3d 535, 541 (1st Cir. 2009) ("Establishing a violation of the covenant of good faith and fair dealing requires at least bad faith conduct."). Conduct potentially amounting to bad faith includes "wrongfully repudiating a contract [and] avoiding performance by affirmatively blocking the happening of a condition precedent …." *Futo*, 826 F. Supp. 3d at 1034. No such actions are alleged here. Plaintiffs use the phrase "bad faith" exactly three times, (Compl. ¶¶ 57–58, 101), but plead no facts to support this label whatsoever. Plaintiffs are simply regurgitating their challenge to the amount of interest paid to them by Defendants. *See, e.g.*, Compl. ¶ 100 ("Defendants exercised their contractual discretion . . . ."). Courts recognize that implied covenant claims are often "attempts to mend an infirm contract claim," and, accordingly, "insist on a real showing [of bad faith]." *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 8–9 (1st Cir. 2011).

Indeed, there is express authority dismissing a breach of an implied covenant claim in the cash sweep context on this exact basis. In *Futo*, plaintiff made the same conclusory allegations, and the Court held that "there are no allegations showing or permitting the plausible inference that [defendant] acted dishonestly or maliciously." *Futo*, 826 F. Supp. 3d at 1034 (dismissing breach of the implied covenant claim with prejudice). Plaintiffs include just three references to bad faith in their Complaint, and each is conclusory. *See* Compl. ¶¶ 57–58, 101. Under the terms of the "contract," when read as a whole, Avantax did not "deprive[] customers of the principal benefit of the Program," (*id.* ¶ 58); rather, it performed its obligations as delineated in the various documents cited in the Complaint. Accordingly, Count II should be dismissed.

## IV. **The Complaint Does Not State a Claim for Breach of Fiduciary Duty (Count III).**

Plaintiffs' breach of fiduciary duty claim fails because AIS, as a nondiscretionary broker-dealer, did not owe them any such duty. The Complaint attempts to bootstrap a fiduciary duty from

buzzwords and references to industry standards, but Plaintiffs cannot manufacture a fiduciary duty out of thin air. The placement of customers' uninvested cash into deposit accounts through the Cash Sweep Program does not, without additional facts establishing advisory discretion or a special relationship, create a fiduciary duty concerning the interest rate credited on those deposits.

To allege a breach of fiduciary duty, Plaintiffs must allege (1) the existence of a fiduciary duty, (2) the breach of said duty, (3) causation, and (4) resulting damages. *De Prins v. Michaeles*, 189 F. Supp. 3d 209, 214 (D. Mass. 2016). They have not met this standard here.

### A. Plaintiffs Have Not Alleged the Existence of a Fiduciary Duty.

A handful of relationships are per se fiduciary in nature, "such as trustee and [beneficiary], guardian and ward, attorney and client[]," but all others are de facto and require plaintiffs to plead special circumstances reflecting that "one person is in fact dependent on another's judgment in business affairs or property matters." *LPL*, 789 F. Supp. 3d at 985 (applying Massachusetts law).

Plaintiffs have not established a fiduciary relationship that is either per se or de facto in nature. As an initial matter, providing a brokerage account does not create a per se fiduciary duty. Plaintiffs attempt to allege that their relationship with Defendants is contractual and per se in nature (Count I). Fiduciary duty claims fail in these circumstances. *LPL*, 789 F. Supp. 3d at 986–87 (collecting cases); *id.* at 986 (quoting *Kriegel v. Bank of Am., N.A.*, No. 07CV12246-NG, 2010 WL 3169579, at *14 (D. Mass. Aug. 10, 2010)) (holding that cash sweep allegations "'fail[] to state a claim for breach of fiduciary duty under Massachusetts' common law" because this "'relationship with plaintiffs was purely contractual'" and, thus, it owed no fiduciary duties to plaintiffs). Indeed, a claim for breach of fiduciary duty requires a showing of more than a broker-customer contract. *See In re Atl. Fin. Mgmt. Inc. Sec. Litig.*, 658 F. Supp. 380, 382 (D. Mass. 1986).

The mere fact that a financial institution offers a cash sweep program also does not support a fiduciary duty. Fiduciary relationships require factual allegations that amount to a special

relationship. Circumstances as Plaintiffs describe do not constitute a fiduciary duty because the Complaint does not — and cannot — plead that Defendants had a "duty or responsibility to supervise, make recommendations, or advise the [Plaintiffs] with respect to" the Cash Sweep Program. *Szulik v. State St. Bank & Tr. Co.*, 935 F. Supp. 2d 240, 276 (D. Mass. 2013). In fact, one cash sweep litigation involving similar facts has already been dismissed under Massachusetts law. *LPL*, 789 F. Supp. 3d at 988–89 (applying Massachusetts law and dismissing the contract and fiduciary breach claims). Notwithstanding a lack of foundation for any per se fiduciary relationship, Plaintiffs allege five grounds for a purported de facto fiduciary duty, none of which hold water: (i) agency; (ii) discretion and control; (iii) common law; (iv) industry standards; and (v) AAS as a registered investment adviser. Compl. ¶¶ 67–69, 104, 106. These theories fail on their own inadequacies and cannot convert an alleged contractual relationship to a fiduciary duty. Courts warn against entertaining causes of action for breach of a fiduciary duty when — in reality — it is an unavailing breach of contract claim in disguise. *See Alantra LLC v. Apex Indus. Techs. LLC*, 636 F. Supp. 3d 223, 238 (D. Mass. 2022); *see also Conklin v. Bank of New York Mellon Corp.*, No. 1:24-cv-12301-IT, 2025 WL 2421003, at *10 (D. Mass. Aug. 21, 2025) ("[I]f the contours of fiduciary duties are defined" by contractual terms, "there can be no claim for a breach of fiduciary duty where [the fiduciary's] 'contested actions fall entirely within the scope of a contract.'") (citation omitted).

First, Plaintiffs fail to allege an agency relationship between Plaintiffs and Defendants as a matter of law or under the facts as they are pled. The Complaint claims "Defendants jointly agreed to act as their customers' agents." Compl. ¶ 67. But a bank-depositor agency relationship, i.e., "sweeping" funds into an interest-bearing deposit account with unaffiliated banks, and back when needed in the AIS account, does not create fiduciary duties. *Maio v. TD Bank*, N.A., No.

1:22-CV-10578-AK, 2023 WL 2465799, at *3 (D. Mass. Mar. 10, 2023) ("the typical relationship between a bank and a customer is a business relationship rather than a fiduciary one"); *Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, 802 F. Supp. 3d 701, 716 (S.D.N.Y. 2025) ("opening . . . accounts at deposit banks, sweeping cash from brokerage accounts and depositing it with the deposit banks, and withdrawing cash from deposit bank accounts and returning it to brokerage accounts" are not "sufficient to create a fiduciary relationship."); *see also Dey v. Robinhood Mkts., Inc.*, 780 F. Supp. 3d 882, 889 (N.D. Cal. 2025).

Also, despite the Complaint's superficial claims of an agency relationship between Plaintiffs and Defendants, the documents forming the basis of Plaintiffs' argument disclaim any such relationship. The Sweep Disclosure repeatedly states that NFS, not AIS or AAS, is Plaintiffs' agent under the Cash Sweep Program. Ex. C at 66 ("As your agent, NFS . . . ."; "as an agency account held by NFS for the benefit of you and other customers and by records maintained by NFS as your agent and custodian."). Once again, the Complaint's use of group pleading violates Rule 8.

Second, Defendants' alleged "discretion and control" over funds does not help Plaintiffs establish a fiduciary duty. Plaintiffs have total control over their funds subject to the Cash Sweep Program. Ex. A at 45 ("[C]lients have the ability to not participate in the Bank Deposit Sweep Program by contacting the client's Advisor . . . and requesting a change."); Ex. C at 65 ("[I]f at any time the Program does not meet your needs . . . your Advisor can assist you in finding an alternative."). Accordingly, Plaintiffs maintain complete discretion over their funds.

This is why courts across the country have by and large held that brokerage accounts do not create a fiduciary duty when the customer retains discretion. *LPL*, 789 F. Supp. 3d at 986 (dismissing fiduciary duty claim because defendant did not possess "the sine qua non of a fiduciary

relationship in the financial advisor context — discretion — with respect to the Cash Sweep Programs"); *In re Wells Fargo Cash Sweep Litig.*, No. 24-CV-04616-VC, 2025 WL 1785315, at *3 (N.D. Cal. June 27, 2025); *Dey*, 780 F. Supp. 3d at 889–90; *In re JPMorgan Chase Cash Sweep Program*, No. 24 CIV. 6404 (LGS), 2026 WL 396055, at *10–11 (S.D.N.Y. Feb. 12, 2026). Plaintiffs' "discretion and control" theory, (Compl. ¶¶ 10, 21, 54, 56–57, 62, 67), falsely implies that the Cash Sweep Program functions as a hedge fund — restricting withdrawals and eliminating customer discretion. Yet, the AIS Sweep Disclosure belies that claim.

Third, the Complaint once again violates Rule 8 by claiming, without any explanation, that some unnamed "common law" duty applies. *Iqbal*, 556 U.S. at 678. Defendants are left guessing and unable to deduce the theory of liability alleged against them, or how to defend against it.

Fourth, the Complaint's hodgepodge citation to industry standards does not create a fiduciary duty. With woefully inadequate specificity, Plaintiffs allege that Defendants purportedly violated Regulation Best Interest ("Reg BI") under the Securities Exchange Act of 1934 and the Investment Advisers Act ("IAA"). Compl. ¶¶ 68–69, 104, 106. Both theories fail.

With regard to Reg BI, any reference to this SEC rule in this context is misplaced. Reg BI imposes a standard of conduct when broker-dealers "mak[e] a recommendation of any securities transaction or investment strategy involving securities." 17 C.F.R. § 240.15l-1(a)(1). The rule is inapplicable to administration of cash sweep programs, which are voluntary cash account services offered to customers, not a recommendation or investment strategy involving securities. *See Dey*, 780 F. Supp. 3d at 890 (holding that a cash sweep program was not a recommendation "regarding securities transactions"). In fact, the Complaint does not allege any facts suggesting that Defendants recommended the Program to Plaintiffs. Plaintiffs simply cannot concoct a fiduciary relationship through reference to Reg BI.

Even if the facts were different, Reg BI does not, in any event, offer a cause of action. *See* Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33327 (July 12, 2019) (Reg BI does not "create[] any new private right of action . . . nor do we intend such a result."); *Allen v. Fid. Brokerage Servs. LLC*, 711 F. Supp. 3d 219, 225 n.5 (S.D.N.Y. 2024) (Reg BI "specifically disclaimed . . . any new private right of action.") (internal citations omitted). Indeed, the SEC made clear that it was not imposing a fiduciary duty on broker-dealers when it issued Reg BI. *See* 84 Fed. Reg. at 33462 ("[I]nstead of adopting our approach in [Reg BI], the Commission could have alternatively imposed a form of fiduciary standard on broker-dealers."). Accordingly, courts have unanimously held that Reg BI cannot form the basis of a breach of fiduciary duty claim against cash sweep programs. *LPL*, 789 F. Supp. 3d at 988 ("The Court concludes that neither the [IAA] nor Reg BI apply here because neither provides Plaintiffs with a private right of action."); *Schmidlin v. Raymond James Fin., Inc.*, No. 8:24-cv-2041-KKM-CPT, 2026 WL 847197, at *11 (M.D. Fla. Mar. 27, 2026) ("If the IAA and Reg BI do not provide a private right of action, they cannot be construed to give rise to a fiduciary duty flowing to the plaintiffs.").

Finally, with regard to the IAA, Plaintiffs arguments are likewise unavailing because (i) the IAA does not create a private right of action here either, (ii) the IAA does not apply because the Cash Sweep Program does not concern "securities," and (iii) Avantax's disclosures satisfy any alleged duty under the IAA. The IAA creates only one, narrow private right of action for conduct that Plaintiffs do not allege here. *LPL*, 789 F. Supp. 3d at 988 ("[T]here exists a limited private remedy under the [IAA] . . . to void an investment advisers [sic] contract, but [] the Act confers no other private causes of action"). But even if Plaintiffs could sue under the IAA here, that law is irrelevant because Congress intended it "to cover those instruments ordinarily and commonly

considered to be securities . . . .” *Marine Bank v. Weaver*, 455 U.S. 551, 559 (1982). The Cash Sweep Program is an account feature, not a security, (Ex. C at 60), and contains none of the characteristics associated with securities. *Marine Bank*, 455 U.S. at 559–60 (common characteristics of securities include public trading and prospectuses). Finally, and in any case, the IAA only requires advisers who make recommendations concerning securities to “make full and fair disclosure of all conflicts of interest,” (Comm’n Interpretation Regarding Standard of Conduct for Inv. Advisers, 84 Fed. Reg. 33669, 33676 n. 57 (June 5, 2019)), which Avantax did. *See* Part VII.A.2. *infra*. Without a fiduciary relationship between the parties, Count III should be dismissed.

### B. Plaintiffs Have Not Adequately Alleged Breach, Causation, or Damages.

Even if Plaintiffs had adequately alleged a fiduciary relationship, which they do not, they must still plead breach, causation, and damages. The Complaint contains more than one hundred paragraphs, yet only a few present even conclusory allegations regarding damages. Compl. ¶¶ 83, 86, 96, 102, 110, 130, 132 (each alleging some minor variation of Plaintiffs “have suffered . . . injury and harm, including economic damages”). These are not well-pled facts, and the Court should not consider them. *Fener*, 513 F. Supp. 2d at 738. Accordingly, Plaintiffs’ breach of fiduciary duty claim should be dismissed.

## V. <u>Plaintiffs’ Negligent Misrepresentation and Omissions Claim Should Be Dismissed (Count IV).</u>

Plaintiffs fail to state a negligent misrepresentation claim, which requires a plaintiff to plead that: (i) defendant supplied false information as guidance, (ii) upon which the plaintiff justifiably relied, (iii) to his financial detriment, and (iv) that the defendant failed to exercise reasonable care in communicating the information. *Cole v. New England Mut. Life Ins. Co.*, 729 N.E.2d 319, 323 (Mass. App. Ct. 2000). Moreover, negligent misrepresentation claims are a species of fraud and must be pled with particularity under Rule 9(b). *N. Am. Cath. Educ.*

*Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 n.4 (1st Cir. 2009) (collecting cases). This requires pleading "the who, what, when, where, and how of the alleged false representations." *Nizhoni Health Sys. LLC v. Netsmart Techs., Inc.*, No. 22-CV-11212-DJC, 2023 WL 3657386, at *7 (D. Mass. May 25, 2023) (quoting *Plante & Moran, PLLC v. Andover Healthcare, Inc.*, No. 17-CV-10093-DJC, 2018 WL 935423, at *4 (D. Mass. Feb. 16, 2018)). Plaintiffs have neither met the four elements of this claim nor alleged it with Rule 9(b)'s required particularity, and Massachusetts's independent duty doctrine bars the claim in any event.

### A. The Independent Duty Doctrine Bars Count IV.

As a preliminary matter, this Court should dismiss the negligent misrepresentation claim, because this dispute is controlled by a contract. Tort claims that rely on an underlying contract require an independent source for that duty of care. *Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278, 289 (D. Mass. 1987) (dismissing negligent misrepresentation claim because tort claims based on contractual breach cannot stand "absent an independent duty imposed by law"). Massachusetts broadly respects the right of contractual parties to set the terms of their relationship and does not allow a party to recover tort damages absent the unusual case where the alleged misconduct is accompanied by a tort that is independent of the contract. If a tort claim is based on the same conduct underlying the contract, the tort claim is duplicative and cannot stand. *E.g.*, *id.*

Here, Plaintiffs pled no independent duty or alleged any misrepresentations or omissions outside of the contract terms. They do not, for example, allege that Defendants omitted or misrepresented the historical interest rates, nor allege that they were misled by Defendants' representatives when discussing the Cash Sweep Program. As a result, courts regularly dismiss tort claims in cash sweep litigation. *See Futo*, 826 F. Supp. 3d at 1029 ("[T]he sources of a duty supporting Plaintiffs' negligence claim are just the contracts between [the parties]," so "the

independent-duty rule bars the claim."); *Liberty Cap. Grp.*, 802 F. Supp. 3d at 717 (dismissing negligence claim because it "impermissibly duplicates Liberty's contract . . . claim[].").

### B. Plaintiffs Fail to Plead Breach of Duty.

The Complaint argues that Defendants committed affirmative misrepresentations and omissions, but none of those listed are actionable. Plaintiffs attack AIS's Avantax Sweep Disclosure claiming that the Program failed to abide by its promise to reflect "prevailing economic and business conditions," (*see, e.g.*, Compl. ¶ 29), but as explained above (*see* Part II.B.2 *supra*), this language is not misleading in the context of the full agreement. *See, e.g.*, Ex. C at 65 ("Interest rates . . . may change at any time and may be based on a number of factors"); *id.* at 60, 65–66 (stating that Program Banks have no duty to pay the highest rates).

Regarding the alleged omissions at issue, they are either immaterial or not omissions at all. The Complaint faults Defendants for purportedly: (i) not sharing irrelevant details of AIS's business relationship with Program Banks, and (ii) not disclosing that the Program paid below-market interest rates. Compl. ¶¶ 77–78. Yet, sharing the details of AIS's partnership with Program Banks is neither feasible nor material to disclose to the customer. The fact that the Program Bank interest rates are higher than Program rates is disclosed throughout the AIS Sweep Disclosure, and customers are free to shop those rates as they wish. In any event, Plaintiffs never plead how omitting the details of Defendants' business arrangement with Program Banks or specific rates paid by competitors "make the information actually disclosed misleading." *Futo*, 826 F. Supp. 3d at 1036. Moreover, the Complaint alleges that AIS did not disclose that it paid "below market [sic]" rates. Compl. ¶ 77. But that is simply untrue, as shown by the very document that Plaintiffs cite throughout the Complaint: the AIS Sweep Disclosure, which explicitly states that AIS's interest rates, deposit tiers, and fee formula are always publicly available. Ex. C at 66; Compl. ¶ 30. Accordingly, Count IV should be dismissed.

### C. There Are No Allegations of Reasonable Reliance.

Plaintiffs make a single, conclusory statement that "Plaintiffs and the Class justifiably relied on Defendants' Program Documents," which is not sufficient to meet the reliance element of a negligent misrepresentation claim. Compl. ¶ 115. To start, this allegation is not just implausibly alleged but directly contradicted by the documents cited by Plaintiffs. Defendants' interest rates are always publicly available. Compl. ¶ 30; Ex. C at 65. All Plaintiffs needed to do to understand the "magnitude of differential" was review the same website links that Plaintiffs did when drafting the Complaint and compare the current rates to any other cash sweep rate. Plus, AIS discloses the maximum fee it may receive in the AIS Sweep Disclosure. Ex. C at 66. As the *Futo* Court noted, "[t]here is nothing inherently false or misleading about directing a customer to a website for specific information." 826 F. Supp. 3d at 1037. Furthermore, Defendants did not need to disclose the rates that Program Banks are paying since any customer may check those banks' direct rates, and cash sweep customers receive the same rate no matter which Program Bank is involved. Ex. C at 65. Accordingly, Count IV fails.

### D. Plaintiffs Do Not Plead That Defendants Caused Them Damages.

Plaintiffs claim that Defendants "directly and proximately caused [them] harm" but fail to plead anything specific about that alleged harm. Compl. ¶ 116. Defendants again are left guessing, e.g., what interest rate would have satisfied Plaintiffs? Without more, Count IV fails.

### E. Plaintiffs Have Not Pled Negligent Misrepresentation with Particularity.

As noted above, negligent misrepresentation must be pled with particularity under Rule 9(b). *N. Am. Cath. Educ. Programming Found., Inc.*, 567 F.3d at 15, n.3. Yet Plaintiffs do not allege any communication or misrepresentation beyond the contract. They have alleged nothing about "who" made misrepresentations or "when" they were made, or "what" made it misleading. *Id.* at 13–16. The only thing that Plaintiffs have alleged on this point is that Defendants' AIS Sweep

Disclosure tells consumers not to expect interest rates at or above the broader market. *See, e.g.*, Ex. C at 60, 65–66. Count IV fails Rule 9(b) and must be dismissed.

## VI. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count V).

A contract purportedly controls the claims here (even if Plaintiffs failed to attach it), which forecloses a claim for unjust enrichment. "As an equitable remedy, unjust enrichment 'does not apply when there is an enforceable contract' governing the parties' relationship." *Futo*, 826 F. Supp. 3d at 1037; *Philibotte v. Nisource Corp. Servs. Co.*, 793 F.3d 159, 167 (1st Cir. 2015) ("A claim for unjust enrichment generally cannot stand where there is an existing, express contract . . . ."); *In re Wells Fargo Cash Sweep Litig.*, 2025 WL 1785315, at *4; *Goldsmith v. UBS Fin. Servs. Inc.*, No. 1:24-CV-6354-GHW, 2026 WL 819461, at *23 (S.D.N.Y. Mar. 25, 2026); *Schmidlin*, 2026 WL 847197, at *11; *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 639 (S.D.N.Y. 2020).

Because Plaintiffs anchor their allegations in their contractual relationship with Defendants, they cannot state a claim for unjust enrichment. *Futo*, 826 F. Supp. 3d at 1037. Defendants do not dispute that a contract controls this case, but they contend that Plaintiffs have failed to attach it or quote from it in a way that satisfies Rule 8. Unjust enrichment is an equitable remedy that is unavailable where a legal remedy exists. Count V thus should be dismissed.

Count V also fails because Plaintiffs fail to allege the required elements. Compl. ¶¶ 117–123. Under Massachusetts law, a plaintiff must allege that defendant violated "the fundamental principles of justice, equity, and good conscience." *Feingold v. John Hancock Life Ins. Co. (USA)*, No. CIV.A. 13-10185-JLT, 2013 WL 4495126, at *4 (D. Mass. Aug. 19, 2013), *aff'd*, 753 F.3d 55 (1st Cir. 2014). First, AIS was entitled to receive the benefits it did under the Program because Defendants are entitled to be compensated for facilitating this service. There is nothing unjust or inequitable about AIS retaining the fees it collected from Plaintiffs' voluntary participation in the

Program. For instance, in *Shaulis v. Nordstrom Inc.*, the court dismissed a Nordstrom shopper's complaint against the clothing store. 120 F. Supp. 3d 40, 55 (D. Mass. 2015), *aff'd*, 865 F.3d 1 (1st Cir. 2017). The shopper claimed that Nordstrom misrepresented sale prices by including "Compare At" prices that compared the sale price to a higher price at which Nordstrom claimed it previously sold the product. The plaintiff alleged that Nordstrom never sold the product at that higher price. The court explained that it was not inequitable or unjust for Nordstrom to retain the revenues it received from sales prices regardless of what shoppers thought they were saving. *See id.* at 55–56.

As in *Shaulis*, Plaintiffs' as-pled claims illustrate that they received what they bargained for, which is interest on uninvested funds that would otherwise generate no interest. Defendants' disclosures informed customers of all material aspects of the Program, and it is not inequitable for AIS to retain the benefit of its bargain.

## VII. <u>Plaintiffs' Massachusetts Consumer Protection Law ("MCPL") Claim Should Be Dismissed (Count VI).</u>

Plaintiffs fail to state a claim under the MCPL. As a preliminary matter, because Plaintiffs' breach of contract claim fails, this derivative claim fails too. *Valelly*, 464 F. Supp. 3d at 646 (dismissing MCPL claim where it was "entirely derivative of Plaintiff's . . . breach of contract . . . claim[]"). Even if this Court were to deny dismissal of the contract claim, Plaintiffs have not pled a plausible MCPL claim. An MCPL claim requires "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection" between the two. *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020). Here, Plaintiffs do not allege a deceptive or unfair act; nor can they show that Defendants' conduct caused them injury. Further, they have no grounds to request treble damages, and their Complaint illustrates that amendment is futile. Plaintiffs' MCPL claim (Count VI) should be dismissed with prejudice.

### A. Plaintiffs Have Not Alleged that Avantax Committed a Deceptive Act.

Plaintiffs have not pled any materially deceptive act. The MCPL does not define "deceptive" acts, but Massachusetts courts describe it as any act or practice that could "have caused a person to act differently from the way he or she otherwise would have acted." *Id.* at 70. Massachusetts courts are also guided by the Federal Trade Commission's ("FTC") standard: "(1) there must be a representation, practice, or omission likely to mislead consumers; (2) the consumers must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is likely to affect consumers' conduct or decision with regard to a product." *Tomasella*, 962 F.3d at 72. Plaintiffs fail to allege each of these elements, so they have not pled a deceptive act under the MCPL and Count VI should be dismissed.

#### 1. Plaintiffs Fail to Allege That Avantax Misled Them.

First, the only alleged misrepresentation Plaintiffs point to is that Avantax disclosed that rates will "vary based upon prevailing economic and business conditions." Compl. ¶ 126. Although Plaintiffs quote this clause out of context, their other allegations inadvertently establish that Defendants conducted themselves consistent with this statement. Plaintiffs note that the cash sweep interest rates were 0.01% in June 2022, and within a year, grew to 0.30% — a thirty-fold increase. *Id.* ¶¶ 30–31, 51, 76. During that same year, Plaintiffs' own cited Federal Funds rate benchmark rose only about three-fold. *Id.* ¶ 31. This variance suggests that Program rates varied with external benchmarks, even though they did not need to do so. *See* Ex. C at 65 (Rates "**may** change at any time and **may** be based on a number of factors including general economic, market and business conditions.") (emphasis added).

Second, reading the documents as a whole, it is unreasonable that any consumer would understand them as promising to *match* economic benchmarks. AIS disclosed ad nauseam that cash sweep interest rates are likely to be lower than money market rates. Ex. C at 60, 65–68; *Gen.*

*Convention of New Jerusalem in the U.S. of Am., Inc. v. MacKenzie*, 874 N.E.2d 1084, 1087 (Mass. 2007) ("The words of a contract must be considered in the context of the entire contract rather than in isolation."). Most notably, AIS informed its customers that "[t]here is no necessary linkage between [Program] Bank rates of interest and the highest rates available in the market." Ex. C at 66. Even disregarding contractual language, Plaintiffs should have understood the difference between the Program rate and external benchmarks. Since the start of the applicable time period in 2022, Plaintiffs have been free to compare Program rates with external benchmarks.

Third, any potential misleading influence was immaterial. The Cash Sweep Program is an ancillary program to the parties' primary investment advisory and brokerage services. Compl. ¶¶ 6–7; Ex. C at 60, 65. The cash sweep is *not* an investment. It is designed as a holding vehicle for *uninvested* cash. Ex. C at 60, 65. Plaintiffs do not plead that, had Avantax made disclosures to their satisfaction, they would have terminated their relationship with Defendants. They do not even plead that they *read* the disclosures. Accordingly, Plaintiffs' MCPL claim should fail. *See Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 115 (D. Mass. 2022).

**2. Plaintiffs Have Not Alleged a Misleading Omission.**

Plaintiffs' omission claim likewise fails. The First Circuit explains the two instances where an omission is actionable: "(1) to tell only half the truth, and to omit the rest . . . and (2) to simply remain silent, if [the defendant] does so under circumstances that constitute an implied but false representation." *Tomasella*, 962 F.3d at 72 (internal quotation marks omitted). The Complaint alleges that Defendants should have disclosed: (i) what rates the Program Banks paid, (ii) Avantax's fees, and (iii) that they are conflicted and pay below-market rates. Compl. ¶¶ 77–78.

Here, Plaintiffs concede that Defendants do disclose their conflicts for the cash sweep. Compl. ¶¶ 70, 78. And they argue the first type of actionable omission applies, i.e., that Avantax's disclosures are inadequate and lead to a false representation. But Avantax discloses that:

- "The income AIS earns . . . in the [Program] will **in almost all circumstances be substantially greater than the amount of interest you earn**." Ex. D at 111.
- "Program Banks **may pay rates of interest on Program Deposits that are lower than prevailing market interest rates**." Ex. C at 66.
- "The Program should not be viewed as a long-term investment. **If you . . . are seeking the highest yields currently available in the market . . . , contact your Advisor to discuss [options] . . . outside of the Program** that may be better suited to your goals." *Id.* at 60.

These disclosures convey all material details of the Program's rates and strategy. They inform customers that the Program offers short-term, below-market interest on uninvested funds. Plaintiffs' claim that they were misled is simply implausible.

**B. Plaintiffs Fail to Allege That Avantax Committed an Unfair Practice.**

Plaintiffs do not state a claim under the MCPL for an unfair practice. "An act or practice is unfair if it falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive or unscrupulous; and causes substantial injury to consumers, plus the conduct must generally be of an egregious, non-negligent nature." *Tomasella*, 962 F.3d at 70–71 (internal quotation marks omitted). When the underlying act is a breach of contract, the breach "must be 'so egregious as to possess an extortionate quality.'" *Zurich Am. Ins. Co. v. Watts Regul. Co.*, 796 F. Supp. 2d 240, 244 (D. Mass. 2011). Complaints must also plead that the defendant "intended to secure 'unbargained-for benefits.'" *Wagner v. Fed. Home Loan Mortg. Corp.*, 494 F. Supp. 3d 80, 87 (D. Mass. 2020).

Here, there is simply no allegation to infer that Defendants meant to extort Plaintiffs. Quite the opposite, Defendants' conflict is plainly and repeatedly disclosed, and consumers may opt out of the Program at any time without consequence, such as increased fees or refusal to offer services.

*See, e.g.*, Ex. C at 65 ("If you desire . . . contact your Advisor to discuss investment options that may be available outside of the [Program] that may be better suited to your goals."). There are also no plausible allegations concerning an unbargained-for gain. No matter how many times Plaintiffs allege that they were misled, it does not make that argument plausible in the face of Avantax's various disclosures. *See, e.g.*, Part II.B *supra*.[4]

### C. Plaintiffs Fail to Allege Misrepresentation, Damages, or Causation With Particularity.

Finally, Plaintiffs fail to allege any element of their MCPL claim with the particularity required by Rule 9(b). *Distefano v. Bank of Am., N.A.*, 822 F. Supp. 3d 168, 173 (D. Mass. 2026) (holding that Rule 9(b) particularity requirement applies to MCPL claims "when it focuses on a claim of fraud."). Plaintiffs' claim sounds in fraud because they allege Defendants "knowingly, willfully, and intentionally misled and deceived customers." Compl. ¶ 128. Yet Plaintiffs flout Rule 9(b) by alleging fraud without any details concerning the allegedly deceptive act, Plaintiffs' purported damages, or how Defendants purportedly caused them. They do not allege when or where their accounts were opened, if they even read the alleged misrepresentations, how much money they had in the cash sweep at any time during the applicable period, or what any advisor or Avantax representatives told them. Thus, Plaintiffs do not meet Rule 9(b)'s particularity requirement for any element of their MCPL claim.

### D. Treble Damages Are Unavailable to Plaintiffs.

Plaintiffs request treble damages, but this remedy is unavailable on the face of the Complaint because they do not allege bad faith or intentionally deceptive or unfair practices.

[4] Moreover, "good faith reliance on a plausible, even if [] incorrect, interpretation of a contract does not constitute" an MCPL violation. *Zurich Am. Ins. Co.*, 796 F. Supp. 2d at 245 (citing *Bos. Symphony Orchestra, Inc. v. Com. Union Ins. Co.*, 545 N.E.2d 1156, 1160 (Mass. 1989)). Plaintiffs do not allege any well-pled facts reflecting bad faith, so they cannot allege an unfair practice.

MCPL 93A §§ 2, 9; *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 128 (1st Cir. 2014) ("[I]n the absence of intentional or bad faith violations of Chapter 93A, [Defendant] is not liable for double or treble damages."). As noted above, Plaintiffs do not allege with particularity, or plausibility, that any deceptive act was intentional, and Defendants have a good faith and reasonable interpretation of their contracts that precludes a finding of intent. *Zurich Am. Ins. Co.*, 796 F. Supp. 2d at 245.

### E. Amendment of the MCPL Claim Is Futile.

Moreover, this claim should be dismissed with prejudice because Plaintiffs plainly cannot present facts to show unfair or deceptive practices, especially when they are repackaged ordinary contract claims. *House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., Inc.*, 775 F. Supp. 2d 296, 299–300 (D. Mass. 2011) (denying motion to amend due to futility).

## VIII. Plaintiffs' Request for Punitive Damages Should Be Stricken.

The Complaint requests punitive damages in the Prayer for Relief but they are not available as a matter of law. Massachusetts has eliminated punitive damages as a matter of common law. *Int'l Fid. Ins. Co. v. Wilson*, 443 N.E.2d 1308, 856 n.20 (Mass. 1983). With the exception of Plaintiffs' MCPL claim — which offers no statutory path to punitive damages — the Complaint alleges claims under Massachusetts common law for which punitive damages are barred.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety.

Dated: October 19, 2026

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

*/s/ Debra Bogo-Ernst*
Debra Bogo-Ernst (*pro hac vice*)
300 North LaSalle Dr.
Chicago, IL 60654-3406
Telephone: 312-728-9062
Facsimile: 312-728-9199
Email: DErnst@willkie.com

Grant Schmidt
Texas Bar No. 24084579
2699 Howell Street
Dallas, TX 75204
Telephone: 214-233-4528
Facsimile: 214-233-4599
Email: GSchmidt@willkie.com

*Attorneys for Defendants Avantax Advisory Services, Inc. and Avantax Investment Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2026. I electronically filed the foregoing document with the Clerk of the court using the CM/ECF system, which sent notification of said filing to all CM/ECF participants.

*/s/ Debra Bogo-Ernst*
Debra Bogo-Ernst